# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| VONZELL BATCHELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:07-CV-313 |
| | ) | |
| DAVID DONAHUE, Commissioner, | ) | |
| Indiana Department of | ) | |
| Correction, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court *sua sponte* pursuant to 28 U.S.C. section 1915A. For the reasons set forth below, the court **DENIES** the plaintiff leave to proceed against Defendants, and **DISMISSES** this complaint pursuant to 28 U.S.C. Section 1915A(b).

BACKGROUND

Pro se Plaintiff, Vonzell Batchelder, a prisoner confined at the Porter County Jail, submitted a complaint under 42 U.S.C. section 1983, alleging that although he has been convicted and sentenced, he remains in the Porter County Jail rather than being sent to the Indiana Department of Correction. He also asserts that while he has been at the jail, guards have used cameras to observe him. Defendants are Indiana Department of Correction ("IDOC") Commissioner David Donahue, IDOC Director of Operations Cecil Davis, and Porter County Jail Warden John Widup.

DISCUSSION

Pursuant to 28 U.S.C. section 1915A(a), the court must review the merits of a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss it if the action is frivolous or malicious, does not state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. The Defendants in this case are governmental officers.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that does not state a claim upon which relief can be granted. Courts apply the same standard under 28 U.S.C. section 1915A as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> In order to state a cause of action under 42 U.S.C. § 1983, . . . the plaintiff must allege that some person has deprived him of a federal right [and] . . . he must allege that the person who has deprived him of the right acted under color of state law. These elements may be put forth in a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). In reviewing the complaint on a motion to dismiss, no more is required from plaintiff's allegations of intent than what would satisfy RULE 8's notice pleading minimum and RULE 9(b)'s requirement that motive and intent be pleaded generally.

*Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citations, quotation marks and ellipsis omitted).

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a RULE 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief"

2

> requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (quotation marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant set out in detail the facts upon which he bases his claim, Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Id.* at n.3(quotation marks and citation omitted). Furthermore, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*, 127 S.Ct. at 1965, citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotation marks omitted).

Batchelder brings this action under 42 U.S.C. section 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984). To state a claim under section 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). The first inquiry in every section 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution

or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

In his first claim, Batchelder alleges that defendants have violated his federally protected rights because they have not sent him to the Indiana Department of Correction even though he has been convicted and sentenced. That Batchelder remains at the Porter County Jail after his conviction states no claim under the Fourteenth Amendment's due process clause. The Constitution does not prohibit states from confining convicted prisoners in a jail rather than a state prison. Once a prisoner has been convicted, "the initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Batchelder also alleges that the failure to send him to the IDOC violates the Fourteenth Amendment's equal protection clause because convicted prisoners who are sent to the IDOC have more educational, vocational, and recreational opportunities, and are provided with better access to health care, more visits, better meals, and better uniforms. But the Equal Protection Clause does not require that all jails and penal facilities have the same conditions of confinement. *Women Prisoners of Dist. of Columbia Dep't of Corr.,* 93 F.3d 910, 926-27 (D.C. Cir. 1996).

> Prison officials would be far less willing to experiment and innovate with programs at an individual institution knowing that a federal court could impose liability on the basis of a program [by program] comparison. Indeed, inmates would suffer because officials would likely provide each institution with the

4

>  bare constitutional minimum of programs and services to avoid the threat of equal protection liability.

*Id.* at 927, quoting *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994). That Batchelder may not have the same opportunities and amenities at the Porter County Jail that he might have at another penal facility states no equal protection claim.

In his second, third, and fourth claims, Batchelder alleges that the Porter County Jail has cameras in his housing pod, one of which allows custody officers to watch and videotape inmates in the shower; that the cells come equipped with video cameras that allow male and female officers to watch and record him while he is undressed; and that there are cameras covering the shower and restroom area that also allow custody officers of both sexes to watch inmates while they are unclothed. Batchelder asserts that the use of cameras at the jail "is a violation of my rights to bodily privacy." (Statement of Claim at p. 1). That the jail has installed surveillance cameras, and may assign female officers to watch the cameras, does not violate any right to privacy.

>  A prison shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. We strike the balance in favor of institutional security, which we have noted is central to all other corrections goals. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

5

*Hudson v. Palmer*, 468 U.S. 517, 527 (1984) (citations, quotation marks, and brackets omitted).

> Guards take control of where and how prisoners live; they do not retain any right of seclusion or secrecy against their captors, who are entitled to watch and regulate every detail of daily life. After *Wolfish* and *Hudson*, monitoring of naked prisoners is not only permissible . . . but also sometimes mandatory.
>
> * * *
>
> Surveillance of prisoners is essential, as *Wolfish* establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible. Guards do the surveillance. Male guards and female guards too . . ..
>
> * * *
>
> [F]emale guards . . . see male prisoners in states of undress. Frequently. Deliberately. Otherwise they are not doing their jobs.

*Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995). Accordingly, use of surveillance cameras at the Porter County Jail does not violate Batchelder's federally protected rights.

### CONCLUSION

For the reasons set forth above, the Clerk is **ORDERED** to **DISMISS** Plaintiff's complaint. The Clerk is further **ORDERED** to close this case.

**DATED: November 5, 2007**               S/RUDY LOZANO, Judge
                                          United States District Court